CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 25 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal Action No. 5:06CR00041 |
| | ) Civil Action No. 5:12CV80439 |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| | ) |
| O'BENSON SESERE, | ) By: Hon. Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendant. | ) |

O'Benson Sesere, a federal inmate proceeding pro se, has moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The motion has been fully briefed and is ripe for review. For the reasons that follow, the court will deny Sesere's motion.

### Background

On September 6, 2006, Sesere and eleven co-defendants were charged in a multi-count indictment with various offenses involving cocaine base ("crack cocaine"). Specifically, Sesere was charged with conspiracy to distribute fifty grams or more of crack cocaine (Count One), plus seven counts of distribution and possession with intent to distribute (Counts Twenty-One through Twenty-Seven). Four of the distribution charges were dismissed on the government's motion, and Sesere was tried in August of 2009 on the four remaining charges (Counts One, Twenty-One, Twenty-Two, and Twenty-Four).

The evidence at trial revealed that, from 2004 to 2006, the Northwest Virginia Regional Drug Task Force ("Drug Task Force") was involved in an extensive investigation of crack and powder cocaine distribution in Winchester, Virginia. The focus of the investigation was an area of Winchester known as "the Block," which essentially served as an open-air drug market. The government presented multiple witnesses, including four co-defendants and five defendants from

a related case, who established that Sesere was a street-level crack cocaine dealer on the Block, and that he worked with other dealers to provide security during drug transactions and to obtain substantial quantities of crack cocaine for distribution. This evidence provided the proof underlying Sesere's conspiracy conviction. A number of other witnesses for the government, including law enforcement officers and a confidential informant, provided testimony in support of the three substantive drug trafficking counts.

On August 19, 2009, the jury returned a guilty verdict against Sesere on all four counts. Sesere subsequently moved for judgment of acquittal and for a new trial, pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. By memorandum opinion and order entered October 9, 2009, the court denied Sesere's motions, finding that there was sufficient evidence to support all four convictions. See United States v. Sesere, No. 5:06-CR-00041, 2009 U.S. Dist. LEXIS 94629 (W.D. Va. Oct. 9, 2009).

The court conducted Sesere's sentencing hearing on November 12, 2009. After considering the relevant evidence, the court found the defendant responsible for at least 500 grams of crack cocaine, the threshold quantity necessary for a base offense level of 34 under the 2008 edition of the United States Sentencing Guidelines. The court departed downward from the guideline range of 168 to 210 months, and imposed a total term of imprisonment of 154 months.

Sesere appealed his convictions and sentence to the United States Court of Appeals for the Fourth Circuit. On appeal, he pursued three contentions of error: (1) that the court erred in denying judgment of acquittal on one of the distribution offenses; (2) that the court erroneously permitted the prosecutors to bolster the credibility of two of the government's witnesses; and (3) that the court erred in its drug quantity finding at sentencing. The Fourth Circuit ultimately

rejected each of Sesere's contentions and affirmed his convictions and sentence. See United States v. Sesere, 413 F. App'x 653 (4th Cir. 2011).

Sesere has now filed a pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, in which he asserts the following claims of ineffective assistance:

1. Defense counsel was ineffective in failing to exclude transcripts of inaudible recordings;

2. Defense counsel was ineffective in failing to subject the government's case to any meaningful adversarial testing;

3. Defense counsel was ineffective in failing to object to the admissibility of co-conspirators' testimony at trial;

4. Defense counsel was ineffective in failing to raise the issue of false testimony on direct appeal; and

5. Defense counsel was ineffective in failing to request that the jury decide the exact drug amount attributable to the defendant.

The motion has been fully briefed and is ripe for adjudication.

## Discussion

Claims of ineffective assistance of counsel are evaluated under the two-prong test enunciated by the Supreme Court of the United States in Strickland v. Washington, 466 U.S. 668 (1984). Under the first prong, the defendant must show "that counsel's performance was deficient." Id. at 687. To establish this deficiency, the defendant must produce evidence that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. Review of counsel's strategic decisions is "highly deferential," and the court "must indulge a

strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." Id. at 689.

Under the second prong, the defendant must establish that counsel's performance "prejudiced the defense." Id. at 687. To demonstrate prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

I. **Claim One**

In his first claim, Sesere alleges that defense counsel was ineffective in "allowing transcripts to be used once the misleading, unintelligible, inaudible and untrustworthiness of the recording became apparent." (Docket No. 954 at 1.) This claim relates to transcripts of two audio recordings that were offered by the government at trial. The first recording was from a controlled buy made by the Drug Task Force on January 11, 2006, when a cooperating informant purchased approximately .9 grams of crack cocaine from Sesere. The second recording was from a controlled buy made by the Task Force on February 18, 2006, when an undercover officer purchased what he suspected to be crack cocaine. The transcript of the first recording was admitted without objection. However, the court sustained defense counsel's objection to the admission of the transcript of the second recording, after the undercover officer acknowledged that the transcript may be incorrect.

To the extent Sesere claims that defense counsel was ineffective in failing to object to the admission of the transcript of the first audio recording, the court concludes that the claim is without merit. Sesere has not demonstrated that the transcript was in "material variance" with the audiotape introduced into evidence. United States v. Pratt, 351 F.3d 131, 140 (4th Cir. 2003).

4

Even if such variance did exist, the court protected against any potential prejudice by specifically instructing the jury that the transcript was of uncertain quality, and that it was up to the jury to decide whether or not the transcript accurately depicted what was recorded. Id.; see also United States v. Collazo, 732 F.2d 1200, 1203 (4th Cir. 1984) ("As a result of the district court's cautionary instructions, the jury was made aware that the transcripts offered only the government's interpretations of what the tapes contained. The repeated cautionary instructions cured any prejudice that might have resulted from discrepancies between tape and transcript.").

For these reasons, Sesere has failed to establish that defense counsel acted unreasonably in failing to object to the admission of the first transcript, or that he was prejudiced by the fact that no objection was made. Accordingly, Claim One fails under Strickland.

## II. Claim Two

In his second claim, Sesere contends that defense counsel rendered ineffective assistance by "failing to subject the [government's] case to any meaningful adversarial testing." (Docket No. 954 at 1.) In his reply brief, Sesere explains that this claim relates to testimony provided by Eugene Lapoint, a witness for the government who was charged in a related case. On direct examination, Lapoint testified that he sold Sesere a total of seven or eight ounces of crack cocaine. This amount was more than double the quantity noted in a report of statements that Lapoint made during an investigative interview in January of 2007. When asked, on cross-examination, whether he remembered telling investigators that he sold Sesere a total of three ounces of crack cocaine, Lapoint testified that he was never asked about Sesere during the investigative interview. Likewise, upon being shown the report from the interview, Sesere testified that he "never talked about O.B. [Sesere] at that time." (Docket No. 729 at 29.)

5

Thereafter, the defense called Special Agent Todd Freiwald from the Bureau of Alcohol, Tobacco, Firearms and Explosives as an adverse witness. Friewald's testimony confirmed that Lapoint previously told investigators that he sold Sesere a total of three ounces of cocaine and, thus, supported the defendant's argument that Lapoint was not a truthful witness for the government.

To the extent Sesere now claims that defense counsel should have challenged the accuracy of the investigative report and the veracity of Agent Freiwald's testimony,* such claim is without merit. It is clear from the record that defense counsel made the tactical decision to challenge the credibility of Lapoint's testimony, by pointing out inconsistencies between the testimony and the report of Lapoint's interview with investigators, and by calling Agent Freiwald as an adverse witness. Under the circumstances presented, including the fact that Lapoint's testimony attributed a larger quantity of crack cocaine to Sesere, the court is convinced that Lapoint has failed to overcome the presumption that counsel's decision was a reasonable, strategic choice. Likewise, Sesere has failed to establish that there is a reasonable probability that the jury's verdict would have been different, if defense counsel had instead chosen to challenge the validity of the investigative report or the credibility of the government agent. Accordingly, Claim Two also fails under Strickland.

---

* In his reply brief, Sesere emphasizes that "[Lapoint] was asked about this Report more than once, and gave the same answer each time." (Docket No. 954 at 6.) Sesere argues that "[t]his alone should have made Counsel contest/question the validity of the Report that was used during trial, but Counsel did not, which clearly shows Counsel was ineffective by failing to subject the Prosecutor's case to any meaningful adversarial testing." (Id.)

### III. Claim Three

In his third claim, Sesere alleges that defense counsel rendered ineffective assistance by "allowing the government to use inadmissible testimony from witnesses which should have been excluded from trial." (Docket No. 954 at 9.) More specifically, Sesere asserts in his reply brief that "[t]he government's case relied solely on the testimony of [co-conspirators] Neda Marie Davenport, Celeste Joseph, Eugene Lapoint, Manot Lusca, Sherry Lynn Sloane, Tiffany Lee Sloane, Sheena Nicole Curry, Lionel Joseph, and Christopher Clark, which were all inadmissible under Fed. R. Evid. 801(d)(2)(E)." (Id. at 10-11.)

Having reviewed Sesere's submissions, the court concludes that this claim is based on a misunderstanding of the meaning of Rule 801(d)(2)(E) of the Federal Rules of Evidence. To admit a co-conspirator's <u>out-of-court</u> statement under this rule, the government must demonstrate that the statement was made "during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). In this case, all of the co-conspirators identified by Sesere testified directly, at trial, as to their involvement in the conspiracy and the role played by Sesere. Consequently, Rule 801(d)(2)(E) is not applicable to their testimony, and counsel had no reason to pursue an objection under this rule. Accordingly, Claim Three is also subject to dismissal. See Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996) ("Failure to raise a meritless argument can never amount to ineffective assistance of counsel.").

### IV. Claim Four

In his fourth claim, Sesere contends that defense counsel rendered ineffective assistance by refusing to raise a claim of prosecutorial misconduct on direct appeal. While Sesere's appeal was pending, Sesere requested that defense counsel supplement the record to include an argument that the prosecutor committed a fraud upon the court by eliciting false testimony from

7

Eugene Lapoint. Counsel declined Sesere's request, and sent him a letter explaining why counsel was of the opinion that the argument was not viable.

Having reviewed the record and the applicable case law, the court concludes that Sesere has failed to demonstrate that counsel's assistance was ineffective under Strickland. It is well-established that "[a] conviction acquired through the knowing use of perjured testimony by the Government violates due process." United States v. Kelly, 35 F.3d 929, 933 (4th Cir. 1994) (citing Napue v. Illinois, 360 U.S. 264, 269 (1959)). This is true regardless of whether the government solicited testimony it knew to be false or simply allowed such testimony to pass uncorrected. Id. To obtain relief on such claim, however, there must be a "'reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Kyles v. Whitley, 514 U.S. 419, 433 n. 7 (1995) (quoting United States v. Agurs, 427 U.S. 97, 103 (1976)).

In this case, as defense counsel explained in his letter to Sesere, there is no reasonable likelihood that Lapoint's false testimony affected the jury's verdict. The record establishes that counsel challenged Lapoint's credibility during cross-examination, and that counsel called Agent Freiwald as an adverse witness to further support the defendant's argument that Lapoint's testimony was not worthy of belief. Given the extent of the evidence against Sesere, which included testimony from multiple witnesses, and the fact that the jury was presented with evidence and argument relating to Lapoint's credibility, the court is convinced that there is no reasonable likelihood that Lapoint's testimony affected the jury's verdict. Accordingly, Sesere was not prejudiced by counsel's failure to raise this argument on direct appeal, and the instant claim of ineffective assistance must be dismissed.

## V. Claim Five

In his fifth and final claim, Sesere alleges that counsel rendered ineffective assistance by "not requesting a jury verdict on the exact drug amount" for which he was responsible. (Docket No. 931 at 10.) For the following reasons, the court concludes that this claim is also without merit.

Sesere was charged in Count One of the Indictment with conspiring to distribute 50 grams or more of cocaine base, which carried a mandatory term of imprisonment of ten years to life. See 21 U.S.C. § 841(b)(1)(A) (2006). Applying the court's instructions, the jury ultimately found the defendant guilty of conspiring to distribute this statutory threshold amount, as required under Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). See United States v. Williams, 439 F. App'x 254, 257 (4th Cir. 2011) ("Following Apprendi, it is the jury's responsibility to determine the specific, statutory threshold drug quantity attributable to any particular member of a drug distribution conspiracy. It is then the sentencing court's obligation to find, within the relevant statutory range, the individual drug quantity reasonably foreseeable to the individual member of the conspiracy."). Because neither Apprendi, nor any subsequent precedent, requires the jury to determine the exact quantity of drugs attributable to the defendant within the applicable statutory range, Sesere's counsel did not act unreasonably in failing to make such request. Accordingly, Claim Five is also subject to dismissal.

## Conclusion

For the reasons stated, the court concludes that Sesere's § 2255 motion must be denied. Additionally, because Sesere has failed to make "a substantial showing of the denial of a

constitutional right," the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c)(1).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendant and all counsel of record.

ENTER: This 24th day of October, 2012.

／s／ Glen Conrad
Chief United States District Judge